IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA NAZIMIEC, | ) | CASE NO. 1:18 CV 1511 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **MEMORANDUM OPINION &** |
| Defendant. | ) | **ORDER** |

## Introduction

Before me[1] is an action by Laura Nazimiec under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] Because the Commissioner's no disability finding lacks substantial evidence, this matter must be reversed and remanded for further administrative proceedings.

## Issue Presented

This case presents a single issue:

The ALJ assigned little weight to the opinion of Nazimiec's treating physician, Dr. Atanase Craciun. Dr. Craciun opined that stress triggers the frequent seizures that Naximiec experiences. Although the ALJ recognized stress as the trigger, he incorporated into the RFC inadequate limitations to address this trigger. Does the assignment of little weight to the opinion of Dr. Craciun have the support of substantial evidence?

---

[1] ECF No. 17. The parties have consented to my exercise of jurisdiction.
[2] ECF No. 1.

## Analysis

This case turns on the little weight assigned to the opinion of Dr. Craciun, Nazimiec's treating neurologist. He treated Nazimiec for seizures and migraines. His opinion provides that Nazimiec would need an undetermined number of unscheduled breaks in an 8-hour workday, would be incapable of even low-stress work, and would be absent more than four times a month.[3] The vocational expert ("VE") testified that being absent 15% of the time would eliminate a significant number of jobs in the national economy.[4] The VE's testimony on a limitation to low stress work is unclear, but suggests a limitation to low stress work would preclude Nazimiec's past relevant work.[5] The residual functional capacity ("RFC") in this case provides for light work with some postural and environmental limitations.[6] There are minimal mental limitations for "no production pace work," although "goal-oriented [work] would be acceptable."[7]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[8] emphasized that the regulations require two distinct analyses in evaluating the opinions of treating sources.[9] The *Gayheart* decision directed that the ALJ must first determine if the opinion must receive controlling weight as well-supported by clinical and laboratory techniques and as

---

[3] ECF No. 9, Transcript ("Tr.") at 629.
[4] *Id.* at 89.
[5] *Id.* at 90-92.
[6] *Id.* at 37.
[7] *Id.*
[8] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).
[9] *Id.* at 375-76.

not inconsistent with other evidence in the administrative record.[10] If the ALJ decides not to give the opinion controlling weight, then a rebuttable presumption exists that the treating physician's opinion should receive great deference.[11] This presumption may be rebutted by application of the factors set forth in 20 C.F.R. §§ 416.927(c)(2)(i)-(ii), (3)-(6).[12] The Court cautioned against collapsing these two distinct analyses into one.[13]

Despite the seemingly clear mandate of *Gayheart*, the Sixth Circuit in later decisions has adopted an approach that permits these two separate analyses to be merged into one so long as the ALJ states "good reasons" for the weight assigned, applying the regulatory factors governing each analytical step.[14] Also, despite the reality that a unified statement of these "good reasons" greatly enhances meaningful judicial review,[15] some authority exists for looking outside the unified statement for analysis of the weight assigned to a treating source's opinion.[16] Going beyond the reasons stated in the unified statement takes the Court in the hazy gray area where the sirens of *de novo* review and *post hoc* rationalization reside. A reviewing district court must avoid both. An ALJ cannot avoid reversal by merely citing exhibits in the record that might support her findings without discussing the content of those exhibits and explaining how that content provides support.[17]

---

[10] *Id.* at 376.
[11] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).
[12] *Gayheart*, 710 F.3d at 376.
[13] *Id.*
[14] *E.g., Biestek v. Comm. of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).
[15] *Smith v. Comm. of Soc. Sec.*, No. 5:13cv870, 2104WL1944247, at **7-8 (N.D. Ohio May 14, 2014).
[16] *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001).
[17] *Smith*, 2104WL1944247, at *7.

Nor can counsel for the Commissioner save a decision from reversal by citing to evidence in the record not cited and adequately discussed by the ALJ.[18] It is for the ALJ, not the court or Commissioner's counsel, to "build a logical bridge from the evidence to the conclusion."[19] "Put simply, . . . there must be some effort . . . to explain why it is the treating physician's conclusion that gets the short end of the stick."[20]

With these principles in mind, I turn to the treatment of Dr. Caciun's opinion.

The ALJ's decision contains an extensive unified statement of the reasons for assigning little weight to Dr. Craciun's report, with citations to the record.[21] The stated reasons include internal inconsistencies in the treatment notes and the failure of those notes to support the severity of the limitations opined by Dr. Craciun.[22]

Nazimiec's argument essentially comes down to "cherry-picking" of the record by the ALJ. Dr. Craciun observed in his opinion that Nazimiec would have good days and bad.[23] Nazimiec's counsel argues that the ALJ relied on the good days and ignored the bad.

---

[18] *Sharp v. Comm'r of Soc. Sec.*, No. 1:14-cv-523, 2015 WL 3545251 (S.D. Ohio June 4, 2015) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014)), *report and recommendation adopted by* 2015 WL 3952331 (S.D. Ohio June 29, 2015).
[19] *Hale v. Colvin*, No. 3:13cv182, 2014 WL 868124, at *8 (S.D. Ohio March 5, 2014).
[20] *Friend* v. *Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).
[21] *Id.* at 42-43.
[22] *Id.* at 43.
[23] *Id.* at 629.

The ALJ here provided a well-done, detailed unified statement that sets forth specific reasons for discounting Dr. Craciun's opinion. The question is whether substantial evidence supports the reasons stated. And the answer in this case is no.

First, as Nazimiec points out, the purported "inconsistency" in Dr. Craciun's opinion flagged by the ALJ as a reason for assigning little weight stemmed from answers to two different questions regarding Nazimiec's seizures. The first question asked, "What is the *average* frequency of your patient's seizures?"[24] The second question asked for the *dates* of the patient's last three seizures.[25] Because Dr. Craciun responded twice per month on the first, and listed one seizure in April, May, and June in response to the second,[26] the ALJ claimed the report was internally inconsistent.[27] But it is axiomatic that Nazimiec may *average* two seizures a month while only having one per month as her most recent three seizures.

The most significant problem, though, is that the ALJ maintains the treatment notes do not support the severity of limitations contained in Dr. Craciun's report without discussing the fact that Dr. Craciun identified stress as a trigger for Nazimiec's seizures[28] – a fact the ALJ acknowledged earlier in the decision – in conjunction with his opinion that Nazimiec was incapable of even low stress work.[29] Despite the ALJ recognizing stress as

---

[24] *Id.* at 626 (emphasis added).
[25] *Id.* (emphasis added).
[26] *Id.*
[27] *Id.* at 43.
[28] *Id.* at 627.
[29] *Id.* at 42.

5

a trigger for Nazimiec's seizures, there is no mention of the record evidence that contradicts Dr. Craciun's opinion on this point.

The record evidence the ALJ points to that purportedly contradicts Dr. Craciun's opinion in general consists of examinations showing Nazimiec "was alert, oriented, and pleasant, not asphasic nor dysarthric, and exhibited good demeanor, normal mental status, normal gait, normal finger-to-nose and heel-to-knee, full strength, intact sensation, and normal reflexes throughout."[30] The ALJ also cited treatment notes that indicated that Nazimiec "was stable and doing very well."[31] Finally, the ALJ relied on "[o]ther examinations [that] demonstrated the claimant was well developed, alert, oriented, and showed normal strength, normal and symmetric reflexes, intact cranial nerves, and normal coordination and gait."[32] But none of these factors goes to or undercuts Dr. Craciun's specific finding that stress was a trigger of Nazmiec's seizures and his conclusion that Nazimiec could not perform even low stress work. And the rest of the ALJ's decision – except for acknowledgment that stress indeed triggered Nazimiec's seizures – is silent as to low stress work. While the RFC does include a limitation of no production-paced work, as is clear from the exchange between Nazimiec's counsel and the VE, low stress work is not simply non-production-paced work. And the VE appeared to testify that a limitation to low stress work precluded past relevant work.

---

[30] *Id.* at 43 (internal citations omitted.
[31] *Id.*
[32] *Id.*

6

Work, especially with no restriction to low stress work, would certainly cause more stress than activities of daily living and possibly increase Nazimiec's symptoms since stress is a trigger. Because the ALJ's weight assessment lacks substantial evidence, this matter must be reversed and remanded for further administrative proceedings consistent with this opinion.

## Conclusion

The Commissioner's no disability finding lacks substantial evidence. This matter must be reversed and remanded for further administrative proceedings. On remand, the ALJ must properly weigh and analyze the opinion of Dr. Craciun, Nazimiec's treating neurologist.

IT IS SO ORDERED.

Dated: April 29, 2019            s/ William H. Baughman, Jr.
                                                            United States Magistrate Judge